CHARLES D. McNELTON, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 25127

July 27, 1995                                    900 P.2d 934

*Morgan D. Harris,* Public Defender and *Robert D. Caruso,* Deputy Public Defender and *Delbert Eugene Martin,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney and *David J. Roger,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Charles McNelton was convicted of first degree murder with the use of a deadly weapon and was sentenced to death pursuant to a jury verdict. At trial, three eyewitnesses who were acquainted with McNelton testified that they saw him approach the victim, Monica Glass, grab the back of her head, point a gun at her forehead, pull the trigger, and walk away as she fell.

McNelton's only allegations of error at the guilt phase of the trial are: (1) the prosecutor's failure to provide gender-neutral grounds for the exercise of peremptory challenges when six men and three women had been challenged, and (2) the district court's failure to prevent McNelton from presenting an alibi defense which he now claims was an unwise tactical decision as it destroyed his credibility. After careful review, we conclude that neither of these contentions have merit.

The majority of McNelton's arguments on appeal relate to the penalty phase of the trial. McNelton argues that his conviction should be reversed due to: (1) prosecutorial misconduct in commenting on McNelton's failure to testify, (2) the district judge's failure to fully advise him of his rights regarding his statement to the jury, (3) the admission of evidence that the victim was pregnant, and (4) an improper finding of aggravating circumstances.

## PROSECUTORIAL MISCONDUCT

At the penalty phase of the trial, McNelton exercised his right of allocution, which is his right to make an unsworn statement to the jury in mitigation of sentencing, and includes " 'statements of remorse, apology, chagrin or plans and hopes for the future.' " Homick v. State, 108 Nev. 127, 133, 825 P.2d 600, 604 (1992) (quoting DeAngelo v. Schiedler, 757 P.2d 1355, 1358 (Or. 1988)). After McNelton made his statement, the prosecutor, in his rebuttal closing argument, stated:

> And then we heard from the Defendant in his unsworn statement not subject to cross-examination, and we learned quite a bit about this person that we will be punishing here, Mr. McNelton. *This was his opportunity to express remorse, to say how sorry he was about Monica Glass, how he felt about taking a human life and his remorse.*
>
> This was the opportunity for Mr. McNelton to tell you that, "I'm going to make this a positive. If you give me life without parole, I'm going to work hard in prison. I'm going to abide by the duties and the regulations that are imposed upon me. I'm going to make myself a better person."
> [OBJECTION AND OBJECTION OVERRULED]
> And he stood before you. *He was here facing the people that were going to determine his future, and not once did you ever hear his remorse about killing Monica Glass;* not once did you ever hear about apologies for his criminal behavior; not once did you hear him say that he was sorry [for his past crimes].

(Emphasis added.)

McNelton claims that these statements constituted an improper comment on the exercise of his Fifth Amendment right against self-incrimination, violating the rule enunciated in Griffin v. California, 380 U.S. 609 (1965). We disagree.

In Harkness v. State, 107 Nev. 800, 803, 820 P.2d 759, 761 (1991), this court stated:

> The United States Constitution states that a defendant shall

not "be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V; *see also* Nev. Const. Art. 1, sec. 8. A direct reference to a defendant's decision not to testify is always a violation of the fifth amendment. *See* Griffin v. California, 380 U.S. 609 (1965); Barron v. State, 105 Nev. 767, 783 P.2d 444 (1989). When a reference is indirect, the test for determining whether prosecutorial comment constitutes a constitutionally impermissible reference to a defendant's failure to testify is whether "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant's failure to testify." United States v. Lyon, 397 F.2d 505, 509 (7th Cir.), *cert. denied sub nom.*, Lysczyk v. United States, 393 U.S. 846 (1968). *See also Barron,* 105 Nev. at 779, 783 P.2d at 451-52. The standard for determining whether such remarks are prejudicial is whether the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 21-24 (1967).

The prosecutor's comments in this case refer indirectly to McNelton's failure to testify. Pursuant to *Harkness,* the first question is whether the jury would naturally and necessarily view the prosecutor's comments as comments on McNelton's failure to testify. We conclude that the jury would not naturally and necessarily view them that way. The prosecutor accused the defendant of failing to express remorse. The natural inference the jury would draw from this statement would be that the defendant was an unfeeling man, not that he failed to testify.[1]

McNelton exercised his right of allocution, and the prosecutor was entitled to comment in rebuttal on McNelton's statement, including commentary on what McNelton did not say which he could properly have said within the bounds of an allocution statement. There is a difference between a comment on the defendant's failure to testify and a comment on omissions in the defendant's statement which reflect on his character. *See* United States v. Lopez-Alvarez, 970 F.2d 583, 595-96 (9th Cir.), *cert. denied,* 506 U.S. 989, 113 S. Ct. 504 (1992) (prosecutor may comment on defense's failure to present exculpatory evidence, as long as that comment is not phrased to call attention to defend-

---

[1]In Lesko v. Lehman, 925 F.2d 1527 (3d Cir.), *cert. denied,* 502 U.S. 898, 112 S. Ct. 273 (1991), the Court of Appeals held that the prosecutor's comment about the defendant's failure to express remorse was a clear reference to the defendant's refusal to incriminate himself. In the context of the instant case, we disagree with that conclusion.

ant's failure to testify). Viewed in context, the prosecutor's comments in the instant case did not call attention to McNelton's failure to testify, but instead addressed McNelton's failure to show any compassion for the victim while seeking compassion for himself. Admission of these statements did not constitute error. Even if the inference were drawn from the prosecutor's statements that he was commenting on McNelton's failure to testify, we conclude that the error was harmless beyond a reasonable doubt.

## FAILURE TO ADVISE OF RIGHTS

McNelton alleges that the district court committed reversible error by not advising him thoroughly regarding his right to testify. McNelton argues that the district court had a duty to advise him that if he testified at the penalty phase, cross-examination would be limited to the scope of the mitigation testimony. We disagree that the judge had that duty. In Hardison v. State, 104 Nev. 530, 534, 763 P.2d 52, 55 (1988), this court held that the trial court has no affirmative duty to advise the defendant that he may make an unsworn statement to the jury in a death penalty case.[2] In *Hardison*, under the applicable statute, NRS 175.552, the defendant was given every opportunity to present evidence in mitigation of his punishment. *Id.* In the instant case the district court advised McNelton of his right to testify under oath and his right to make an unsworn statement regarding remorse, apology, chagrin or plans for the future; McNelton took advantage of that opportunity. The trial judge has no duty to advise the defendant of every ramification of his decision to make an unsworn statement. Rather, defendant's trial counsel has this obligation.

## ADMISSION OF EVIDENCE

McNelton contends that the sentencing phase of the trial was rendered fundamentally unfair by the introduction of evidence that the victim was pregnant at the time she was murdered. We disagree. This court has held that in the penalty phase of a first degree murder case, NRS 175.552 permits the trial court to

---

[2]In *Hardison*, the defendant relied upon NRS 176.015(2) to support his claim that the district court had an obligation to ask the defendant if he wished to make a statement on his own behalf and present information in mitigation of his punishment. *Id.* at 534 n.2, 763 P.2d at 55 n.2. We held that the district court had no such obligation under NRS 175.552, the controlling statute. *Id.* at 534, 763 P.2d at 55.

govern the admissibility of victim impact evidence.[3] Smith v. State, 110 Nev. 1094, 1106, 881 P.2d 649, 657 (1994). The United States Supreme Court has recognized that admission of victim impact information is not unconstitutional. Payne v. Tennessee, 501 U.S. 808 (1991).[4] Since "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question," it is not categorically barred by the Eighth Amendment. *Id.* at 825. States have broad discretion in enacting legislation and rendering decisions regarding the use of victim impact evidence in the sentencing determination. *Id.* "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Id.* at 825. The question is whether the victim impact evidence "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

In Homick v. State, 108 Nev. 127, 137, 825 P.2d 600, 606 (1992), we set out the standard for relevancy in sentencing hearings as follows:

> The key to criminal sentencing in capital cases is the ability of the sentencer to focus upon and consider both the individual characteristics of the defendant and the nature and impact of the crime he committed. Only then can the sentencer truly weigh the evidence before it and determine a defendant's just deserts.

There is no doubt that the fact that the victim was pregnant relates

---

[3]NRS 175.552(3) states, in relevant part:

> In the hearing, evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible.

The legislature has established a state policy in NRS 176.015 in favor of admitting victim impact statements at sentencing hearings. In first degree murder cases, that statute is superseded by NRS 175.552, the statute specifically governing first degree murder cases. Pursuant to NRS 175.552, admission of victim impact evidence is discretionary with the district court.

[4]Previous cases held that victim impact evidence is irrelevant to a defendant's blameworthiness, and therefore its admission allows the jury to consider arbitrary information in violation of the Eighth Amendment. Booth v. Maryland, 482 U.S. 496 (1987), *overruled by* Payne v. Tennessee, 501 U.S. 808 (1991). *Payne* undermined this reasoning by concluding that victim impact evidence *is* relevant to the defendant's blameworthiness. *Payne,* 501 U.S. at 825.

directly to the impact of the crime. The defendant's actions affected not just the victim's life, but the life of another. Although this information may be regarded as prejudicial, its probative value on the issue of the impact of the crime far outweighs its prejudicial effect. We hold that the admission of the evidence that the victim was pregnant did not render the trial fundamentally unfair.

## AGGRAVATING CIRCUMSTANCES

In reaching its decision to impose the death penalty the jury found two aggravating circumstances:

> that the murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another; and
> that the murder was committed by a person under sentence of imprisonment.

McNelton claims that his prior felony convictions were infirm as a matter of law and therefore invalid as aggravating circumstances in this case. At the sentencing hearing, McNelton failed to object to the introduction of documentary evidence establishing the prior convictions and to the testimony of the numerous victims, witnesses and investigating officers who testified to the details of the crimes. In fact, in closing argument at the penalty phase, McNelton's counsel stipulated that the prosecutor had demonstrated evidence of aggravating circumstances. Furthermore, the record contains substantial evidence to support the validity of the three prior convictions—a 1979 robbery, a 1980 robbery, and a 1984 attempted robbery and assault by means of force likely to produce great bodily injury. McNelton has presented no evidence which would show that these convictions were constitutionally invalid. If a defendant claims that prior convictions were unconstitutionally obtained, the defendant bears the burden of proving their unconstitutionality. Dressler v. State, 107 Nev. 686, 698, 819 P.2d 1288, 1296 (1991).

McNelton argues that he was not "under sentence of imprisonment" within the meaning of NRS 200.033(1) at the time of the murder.[5] This contention is without merit. This court has upheld

___

[5]NRS 200.033 provides that one of the circumstances "by which murder of the first degree may be aggravated [is]:

> 1. The murder was committed by a person under sentence of imprisonment."

the "sentence of imprisonment" aggravator when a defendant commits the murder while still serving his sentence for another crime even though he has been released from physical incarceration. *See* Geary v. State, 110 Nev. 261, 871 P.2d 927 (1994).

McNelton argues that the "under sentence of imprisonment" aggravator is unconstitutional because it is racially biased. He alleges that more African-American males are under sentences of imprisonment and therefore are more likely to get the death penalty.

When a statute is not facially discriminatory, but instead in application has a disproportionate impact on a particular group of persons, the person challenging the statute must show that the legislature intended the statute to have the resulting effect, or that it has maintained the statute in effect because of its impact on a particular group. McKleskey v. Kemp, 481 U.S. 279, 298-99 (1987). Only by making this showing will a defendant make out an equal protection challenge to a law and have the law stricken. *Id.* at 298. McNelton has made no showing to support his position, and it therefore must be rejected.

### APPROPRIATENESS OF THE DEATH PENALTY

McNelton argues that although his crime may be characterized as first degree murder, it does not rise to a level warranting the death penalty. Under NRS 177.055(2), which provides for automatic appeal and mandatory review of death sentences by this court, this court is obligated to consider:

> (c) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and
> (d) Whether the sentence of death is excessive, considering both the crime and the defendant.

There is no indication in the record that McNelton's sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor. As previously discussed, the evidence supports the aggravating circumstances which the jury found; no mitigating circumstances were found. Upon considering the circumstances of the crime, the defendant and his record, we conclude that the sentence of death is not excessive.

For the foregoing reasons, we affirm the judgment of conviction of first degree murder and the sentence of death.