JAMES EARL HILL, Appellant *v.* THE
STATE OF NEVADA, Respondent.

No. 28498

February 26. 1998                              953 P.2d 1077

[Rehearing denied May 20, 1998]

*Steven G. McGuire,* State Public Defender, *Timothy O'Toole,* Deputy State Public Defender, *Kent Hart,* Appellate Deputy State Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Christopher Laurent,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

On March 8, 1983, appellant James Earl Hill and his co-defendant, Brian Marshall, broke into the apartment occupied by Leroy and Altonia Matthews. Hill committed a heinous act of sexual assault on Altonia by forcibly inserting a stick into her rectum. Meanwhile, Marshall struggled with Leroy in the living room/kitchen area of the apartment. Two days later, Altonia died from her injuries.

After their arrest on March 13, 1983, Marshall and Hill made voluntary statements to the police, each blaming the other for the sexual assault and murder of Altonia. Eventually, Marshall pleaded guilty to various charges, including first degree murder, and received, *inter alia,* a sentence of life with the possibility of parole. Hill proceeded to trial, was found guilty, and was sentenced to death by a three-judge panel after the jury deadlocked in the penalty phase. This court affirmed Hill's conviction on direct appeal. Hill v. State, 102 Nev. 377, 724 P.2d 734 (1986), *cert. denied,* 479 U.S. 1101 (1987). Subsequently, Hill filed a petition for post-conviction relief in the district court. The district court denied the petition, and this appeal followed.

### FACTS

On March 8, 1983, at 11:00 p.m., Hill and Marshall kicked in the front door to an apartment occupied by the Matthews. The couple was in bed, and Altonia had already fallen asleep. She was fifty-six years old and confined to a wheelchair due to paralysis on her left side resulting from a stroke.

After hearing the crash of the front door, Leroy ran to the

bedroom doorway and saw two young men coming into the apartment toward the bedroom. Leroy slammed the bedroom door closed and pushed a dresser against it, attempting to barricade himself and his wife inside. When Leroy discovered that he could not keep the intruders out, he went to the bedroom window, removed a stick used to lock the window shut ("window stick"), and placed the window stick on the bed. He opened the window and put his head outside when he encountered Marshall, who had come around the building to meet Leroy at the window. Marshall was carrying a sawed-off pool cue stick ("cue stick"); however, Leroy mistook it for a gun. Marshall threatened to "blow [Leroy's] head off" if he went out the window. Therefore, Leroy retreated back into his bedroom. Marshall apparently went back inside to assist Hill in pushing the bedroom door open and overpowering Leroy's barricade.

Once Hill and Marshall were inside the bedroom, Altonia awoke to the commotion. She asked what was happening, and Hill hit her hard on her forehead with his fist, exclaiming, "Shut up, Bitch!" At this time, Marshall demanded the television, jewelry, and money. Leroy responded that he and his wife did not have any of those items.

Marshall then coaxed Leroy out of the bedroom and into the living room. Once Leroy followed Marshall, he realized the item in Marshall's hand was not a gun as he had thought; rather, it was the cue stick. Therefore, Leroy attempted to grab the cue stick from Marshall, and the two struggled and fought over the cue stick until they eventually reached the kitchen, located near the front door. Leroy would not let go of the cue stick, and Marshall hit him with a fist. Leroy then tripped and fell on the floor. Marshall climbed on top of Leroy and started choking him with the cue stick across his neck. Leroy later testified that Marshall never left his presence throughout the entire ordeal. He further testified that he was positive Marshall was the man with whom he struggled, not Hill. This is supported by the fact that Leroy recognized Marshall and Hill from the neighborhood prior to March 8, 1983. Also, at trial, other testimony was presented that Hill and Marshall looked nothing alike and could not easily be mistaken for each other. Hill has a much darker complexion than Marshall and is about five or six inches shorter than Marshall.

In the meantime, Hill was left in the bedroom with Altonia. Leroy heard his wife screaming in great pain and yelling, "Why are you doing that to me? Don't do that to me!" Later it was discovered that Hill had beat her up and sexually assaulted her by deeply and repeatedly thrusting a stick, presumably the window stick, inside her anal opening with great force. Eventually, Marshall yelled to Hill to leave the premises. Before leaving,

Marshall threatened Leroy that if he told the police, he was as good as dead. Marshall and Hill then left the apartment.

Leroy went into the bedroom to discover his wife beaten up and bloody, lying on the floor. He also saw the window stick lying on the bed. Leroy placed the window stick back in the window. Leroy put Altonia in her wheelchair and moved her into the living room where he carried her to the couch. He got cold towels and attempted to attend to her wounds. Leroy then moved Altonia to the floor because she was in such pain; thereafter, she again requested to be placed on the couch. Leroy testified that he did not realize how injured she was until she told him that she thought she was dying. Because the couple did not own a phone, Leroy was forced to leave his injured wife and run several blocks to his sister-in-law's house to call an ambulance. Additionally, because Marshall lived nearby and Leroy feared another confrontation, Leroy had to proceed a few blocks out of his way to get to the phone.[1] Afterward, the ambulance and the police arrived at the Matthews residence, and Altonia was transported to the hospital.

On March 10, 1983, Altonia died from her injuries. Dr. James Clarke, the medical examiner, performed an autopsy. He later testified at trial that Altonia's external injuries included deep lacerations on her forehead penetrating all the way to the bone. She had severe bruising, including a black eye, and several broken teeth. Altonia additionally suffered from deep cuts to her perineum (the area between her vaginal and anal openings) so severe that there existed only one common opening. Dr. Clarke testified that this injury resulted from a sharp-ended stick, such as the window stick, being thrust inside her with great force at least four or five times.

Dr. Clarke further testified as to Altonia's internal injuries. Before she died, Altonia underwent surgery to repair her abdomen and remove her sigmoid colon (the part of the large intestine that connects the colon with the rectum) because they were perforated by the same object that tore her perineum. There was damage to her kidney and hemorrhaging in the kidney area. Dr. Clarke informed the jury that the object used to assault Altonia was thrust into her at least fourteen inches deep in order to reach the kidney from her anal opening.

Dr. Clarke testified that the cause of Altonia's death was

---

[1] Inexplicably, there was a four-hour delay between the time Marshall and Hill left the Matthews' apartment at about 11:30 p.m. and the time when the ambulance was called at 3:30 a.m. Leroy testified that he delayed only about fifteen to twenty minutes after the two men left. Given the duress he was under, Leroy likely delayed longer than he thought he had, attempting to comfort his wife. Additionally, running to his sister-in-law's house may have taken more time than he realized.

peritonitis (inflammation of the abdominal surfaces) and atelectasis (combination of the injuries and shock causing the lungs to collapse) due to someone thrusting a long sharp object, likely the window stick, into her rectum.

On March 13, 1983, after police investigations led to Marshall and Hill as suspects, Marshall was arrested. He made two voluntary statements to the police, apparently blaming Hill for the sexual assault, while admitting his involvement in the other crimes committed on the Matthews. Later that day, Hill was also arrested, and he, too, made voluntary statements to the police admitting his involvement, but insisting that Marshall committed the sexual assault on Altonia.

After a preliminary hearing, on April 27, 1983, an information was filed against both defendants, charging them with various crimes arising from the March 8, 1983 incident. These charges included: (1) one count of burglary with intent to commit a felony, (2) two counts of attempted robbery with a deadly weapon, (3) two counts of battery with a deadly weapon, one each on Altonia and Leroy, (4) one count of sexual assault with a deadly weapon, and (5) one count of murder with a deadly weapon.

On April 28, 1983, the state filed a notice to seek the death penalty based on the following aggravating circumstances: (1) the murder was committed during the commission of a burglary, (2) the murder was committed during the commission of a robbery, (3) the murder was committed during the commission of a sexual assault, and (4) the murder involved torture. NRS 200.033(4), (8).

On May 27, 1983, Marshall pleaded guilty to burglary, two counts of attempted robbery with a deadly weapon, battery with a deadly weapon committed on Leroy, and first degree murder with a deadly weapon. Marshall received several prison sentences for these convictions, including two life terms with the possibility of parole for first degree murder with a deadly weapon.

The jury trial for Hill commenced on June 28, 1983. On July 6, 1983, a jury found Hill guilty of burglary, attempted robbery with a deadly weapon, attempted robbery, battery with a deadly weapon upon Altonia, sexual assault with a deadly weapon, and first degree murder with a deadly weapon. It further found him not guilty of battery with a deadly weapon upon Leroy.

On August 22, 1983, after the jury was unable to reach a verdict at the penalty phase, a three-judge panel sentenced Hill to death for the first degree murder conviction. Hill was additionally sentenced as follows: (1) ten years in prison for burglary, (2) seven and one-half years in prison for attempted robbery plus a consecutive seven and one-half year term for the deadly weapon

enhancement, (3) seven and one-half years in prison for attempted robbery, (4) ten years in prison for battery with a deadly weapon, and (5) life in prison for sexual assault plus a consecutive term of life for the deadly weapon enhancement. All sentences were run consecutively.

This court affirmed Hill's convictions and sentences on appeal. Hill v. State, 102 Nev. 377, 724 P.2d 734 (1986), *cert. denied,* 479 U.S. 1101 (1987). On September 26, 1986, Hill filed a timely petition for post-conviction relief, alleging ineffective assistance of both trial and appellate counsel. On January 23, 1989, after the district court appointed counsel for Hill, he filed a supplemental petition for post-conviction relief. On September 21, 1989, the district court conducted an evidentiary hearing on Hill's petition. After arguments by counsel, on November 22, 1989, the court ruled that it would deny the petition, concluding that counsel for Hill had provided effective assistance. On August 9, 1991, the court filed its findings of fact, conclusions of law, and an order denying the petition. The notice of appeal was filed on August 13, 1991.

## DISCUSSION

*Standard of review*

Generally, a district court's findings of fact with respect to claims of ineffective assistance of counsel are entitled to deference upon appellate review. Riley v. State, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994), *cert. denied,* 514 U.S. 1052 (1995).

In this case, Hill argues that we should instead utilize a *de novo* review of the district court's order denying relief because a different judge conducted the evidentiary hearing than the judge who signed the order denying Hill's post-conviction petition. We conclude that this argument has no merit in the instant matter and review this case using a deferential standard. Although it is true that a different judge signed the order than conducted the evidentiary hearing, the judge at the hearing had already made his ruling and findings of fact at the conclusion of those proceedings. He ordered the state to draft the order, and two years later the order was signed, albeit by a different judge. After a review of the record, we conclude that the written order accurately reflected the original judge's findings, conclusions, and order.[2]

---

[2]Even if we elected to use a *de novo* standard as urged by Hill, we would nevertheless conclude that none of his contentions has merit.

I. *Trial and appellate counsel provided Hill with effective assistance*

To state a claim of ineffective assistance of counsel that is sufficient to invalidate a judgment of conviction, petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's errors were so severe that they rendered the verdict unreliable. Lozada v. State, 110 Nev. 349, 353, 871 P.2d 944, 946 (1994) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

A. *Investigation of Hill's mental competency and status*

Hill claims that his trial counsel was ineffective for failure to investigate and pursue the possibility that Hill was mentally incompetent to stand trial or an insanity defense at trial due to his traumatic childhood and mental retardation. We conclude this assertion is wholly without merit.

The test to determine whether one is mentally competent to stand trial is whether that person "is not of sufficient mentality to be able to understand the nature of the criminal charges against him, and because of that insufficiency, is not able to aid and assist his counsel in the defense interposed upon the trial or against the pronouncement of the judgment thereafter." NRS 178.400(2); *see also* Dusky v. United States, 362 U.S. 402, 402 (1960); Melchor-Gloria v. State, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983).

At the evidentiary hearing in this case, both Hill's trial attorneys testified that Hill did not appear to be mentally incompetent, even though they were aware that his intelligence quotient (IQ) was only 68, categorizing Hill as mildly mentally retarded. Hill's primary counsel spoke with him on several occasions, and the attorney never felt the need to investigate whether Hill was competent. He further testified that Hill assisted counsel during the trial, and they spent much time discussing trial strategy without any problems communicating. Hill's second counsel also testified at the hearing that Hill was able to grasp what was going on and could appreciate the gravity of the murder charge.

Moreover, for the purposes of the petition for post-conviction relief, Hill's new counsel consulted with two psychiatrists who examined Hill. Each doctor reported that both at the time of the trial and the evidentiary hearing on the post-conviction petition, Hill had the capacity to understand the nature of the proceedings and the penalty imposed. They opined that Hill had the mental competence to assist counsel. Further, they concluded that Hill was able to form a specific intent to take a life and suffered from no extreme emotional distress which would suggest support for an insanity or diminished capacity defense.

We further note that Hill's trial counsel retained a psychologist to examine Hill to provide mitigating evidence at the penalty hearing. The psychologist did not report any concern about Hill's ability to appreciate the nature of the proceedings.

Accordingly, Hill has presented no evidence whatsoever, other than a low IQ, that he was either mentally incompetent to stand trial or that he met the standard for an insanity defense at the time of the murder. Therefore, we conclude that Hill's trial counsel cannot be deemed incompetent to have failed to pursue such avenues.

### B. *The state's reference in the guilt phase to Marshall's voluntary police statement*

After Marshall's arrest, he gave voluntary statements implicating Hill as the perpetrator of the sexual assault and murder of Altonia. At trial, the prosecutor questioned the police officer who took the statement. For foundational purposes, direct examination revealed to the jury that Marshall made a statement; however, the content of that statement, namely that Marshall blamed Hill for the sexual assault, was not disclosed. Further, at closing arguments in the guilt phase, the prosecutor again made clear that Marshall had made a statement, but that the content was not in evidence. Although prior to trial, Hill's counsel ensured that Marshall's statement would not be admitted, they did not object when the references to that statement were made. Hill now contends that his trial attorneys were ineffective ''by allowing their client to be tried and sentenced on the basis of inadmissible, patently prejudicial evidence,'' in violation of Bruton v. United States, 391 U.S. 123 (1968). Hill alleges that the jury inferred that Marshall implicated Hill and, therefore, used this as evidence of Hill's guilt. Further, citing Schrader v. State, 102 Nev. 64, 714 P.2d 1008 (1986), Hill contends that the prosecutor's reference to matters not in evidence was improper and his counsel was ineffective because no objection was lodged.

We note again that the specific contents of Marshall's hearsay statements were never admitted into evidence. This was due to the successful efforts of Hill's counsel to exclude these potentially prejudicial accusations. Only the fact that Marshall made statements existed was known to the jury. Therefore, we conclude that no *Bruton* violation occurred. Moreover, a careful review of the record has failed to disclose any reference to Marshall's statement that would lead the jury to believe that Marshall blamed Hill for the sexual assault and murder. Accordingly, we conclude Hill's claim of ineffective assistance of counsel .with respect to this claim has no merit.

## C.  *Cruel and unusual punishment.*

Hill alleges that his trial counsel was ineffective for failing to challenge the death penalty on the ground that it is cruel and unusual punishment to execute mentally retarded persons, in violation of the Eighth Amendment of the United States Constitution and Article I, Section 6 of the Nevada Constitution. He further avers that his appellate counsel was ineffective for failing to raise this issue on appeal.

Hill had an IQ of 60 as a child and a full scale IQ of 68 as an adult; therefore, he is mildly mentally retarded. Furthermore, he is illiterate and functions at the mental age of an eleven-year-old.

Hill acknowledges that the United States Supreme Court in Penry v. Lynaugh, 492 U.S. 302, 338-40 (1989), rejected the notion that executing a mentally retarded person amounts to cruel and unusual punishment. Nevertheless, Hill asserts that due to the growing trend of state legislatures prohibiting such executions, this court should adopt such a standard. Hill has failed to provide any authority that proscribes imposing the death penalty on mildly retarded persons based on constitutional grounds.

Given the brutality of these crimes, Hill's ability to understand the nature of the proceedings, and the fact that his statements to the police confirm his knowledge of the difference between right and wrong, we conclude that the imposition of the death sentence in this case does not offend any constitutional proscriptions against cruel and unusual punishment. We defer to the sentencing body's determination that Hill deserves the death penalty despite his low intelligence. Therefore, Hill's counsel was not ineffective for failure to challenge the death penalty on this basis.

## II.  *Hill was the actual perpetrator of the sexual assault and murder*

Hill alleges that his appellate counsel was ineffective for failure to bring a petition for rehearing after issuance of this court's decision on direct appeal. Specifically, Hill contends that this court misapprehended or overlooked a material fact: neither the three-judge panel nor the jury ever found that Hill was the actual perpetrator.

This issue was not raised in Hill's petition for post-conviction relief, nor has he alleged cause and prejudice for failure to raise it below. Generally, we decline to consider such issues. *Cf.* Hewitt v. State, 113 Nev. 387, 936 P.2d 330 (1997); Emmons v. State, 107 Nev. 53, 807 P.2d 718 (1991). However, because this issue raises a claim of constitutional dimension which, if true, might

invalidate Hill's death sentence and "the record is sufficiently developed to provide an adequate basis for review," we will address it. Jones v. State, 101 Nev. 573, 580, 707 P.2d 1128, 1133 (1985). Nevertheless, we conclude Hill's argument has no merit.

Enmund v. Florida, 458 U.S. 782, 797 (1982), held that the Eighth Amendment is violated by the imposition of the death penalty on a defendant who aided and abetted a felony "in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."[3] Therefore, Hill argues that without a finding that he actually killed, attempted to kill, or intended to kill Altonia or employ lethal force, he cannot receive the death penalty. This claim is of no avail because after a careful review of the record, we conclude that the jury and the three-judge panel each independently found that Hill was the actual perpetrator of the sexual assault and murder and not an aider/abettor to Marshall.

Initially, we conclude that the evidence submitted at trial was sufficient for a trier of fact to find that Hill was the actual perpetrator. Leroy testified in no uncertain terms that he struggled with Marshall in the living room/kitchen area and Marshall never left his sight. Additionally, Leroy testified that Hill remained in the bedroom during this struggle. This is corroborated by the testimony of Lavone Kelly, a neighbor of the Matthews and an acquaintance of Marshall and Hill. She testified that during the incident, she had the opportunity to be outside the kitchen window of the Matthews' apartment. Although she could not see what was taking place, she heard a voice from inside, near where she was listening, call to another person to leave the apartment. She further testified that she recognized that voice to be Marshall's. Such testimony places Marshall, not Hill, in the living room/kitchen area where Leroy testified the struggle with Marshall took place.

The only evidence presented that Marshall committed the atrocities on Altonia was Hill's own self-serving voluntary statements to the police shortly after his arrest and the testimony of

---

[3]Tison v. Arizona, 481 U.S. 137, 154 (1987), modified *Enmund* slightly, announcing that "substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an 'intent to kill.' " If a defendant had the culpable mental state of reckless indifference to human life and his participation in a felony was major, the death penalty is not prohibited as disproportionate by the Eighth Amendment. *Id.* at 158; *see also* Allen v. State, 874 P.2d 60, 64 (Okla. Crim. App. 1994).

Ray Turner, a convicted felon and fellow jail inmate of Marshall. Turner testified that Marshall told him that Marshall forced a stick into Altonia's anal opening, but that both Marshall and Hill vaginally raped her. The trier of fact is entitled to determine the weight and credibility to give the evidence. Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981). Therefore, it is entirely reasonable for the jury and the three-judge panel to decide that Hill, not Marshall, was the actual perpetrator, and we conclude that such was indeed the finding in this case.

The jury returned a verdict finding Hill not guilty for the charge of battery with a deadly weapon committed upon Leroy, while returning a verdict of guilty for sexual assault on Altonia. Accordingly, it is evident that the jury believed the state's version of events, specifically, that Hill was the actual perpetrator of the acts upon Altonia. Had the jury believed that Hill was struggling with Leroy while Marshall committed the sexual assault, it would not have returned the verdicts as it did.

Moreover, in the jury penalty phase, the jury was unable to agree on the appropriate punishment for Hill. However, it returned the special verdict forms indicating it unanimously found all four aggravating circumstances to exist, while finding that no mitigating circumstances existed. Of particular note-worthiness was the unanimous finding of the aggravator that Hill murdered Altonia while committing sexual assault. Therefore, we conclude that the jury unanimously and beyond a reasonable doubt found that Hill actually committed the sexual assault leading to Altonia's murder.

Next, although the three-judge panel took the jury's verdicts into consideration, it nevertheless conducted an independent review of the evidence, concluding that Hill was the actual perpetrator. The panel adopted the penalty phase jury instructions which did not allow Hill to be sentenced to death without a finding that he was indeed the actual perpetrator. The panel stated:

> The issue has been raised whether or not the defendant was the actual perpetrator of the crime of murder. *This court finds as a matter of law, based upon a review of the evidence, transcripts* and verdicts of the crimes, verdicts of the jury, that there is substantial evidence upon which the jury found beyond a reasonable doubt:
>
> One, the defendant committed the crime of sexual assault with the use of a deadly weapon;
>
> Two, the defendant committed the crime of murder with the use of a deadly weapon. This is further substantiated by the finding of the jury of not guilty to count four, battery with use of a deadly weapon on Leroy Matthews.

(Emphasis added.)

Accordingly, because we conclude that Hill was determined to be the actual perpetrator of the crimes, his rights under *Enmund* were not violated. Therefore, his appellate counsel was not ineffective.

### III. *Issues not raised in Hill's petition for post-conviction relief*

Hill asserted numerous issues on appeal which he failed to raise in his petition below. Hill has failed to allege good cause for failing to raise these issues previously and has failed to demonstrate prejudice because the claims are either belied by the record or lack legal support.

Specifically, Hill's claim that the reasonable doubt jury instruction was unconstitutional lacks legal support. Wesley v. State, 112 Nev. 503, 916 P.2d 793 (1996), *cert. denied,* 520 U.S. 1126, 117 S. Ct. 1268 (1997). Also, Hill's claim of error regarding the jury instruction on executive clemency lacks legal support. Miller v. Warden, 112 Nev. 930, 921 P.2d 882 (1996).

The remainder of Hill's claims are presented under an allegation of ineffective assistance of trial or appellate counsel. First, Hill alleges that his right to a probable cause hearing within forty-eight hours of his arrest was violated. County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Hill's contention is belied by the record, which shows that on March 14, 1983, the day after Hill's arrest, a magistrate indicated probable cause was met.

Second, based on the controlling law in 1983, Hill's allegation that the information provided inadequate notice of the charges against him lacks legal support. Theriault v. State, 92 Nev. 185, 191, 547 P.2d 668, 672 (1976), *overruled by* Alford v. State, 111 Nev. 1409, 1415 n.4, 906 P.2d 714, 717-18 n.4 (1995).

Third, Hill's claim of prosecutorial misconduct based on an alleged violation of Caldwell v. Mississippi, 472 U.S. 320, 333 (1985), is belied by the record.

Fourth, Hill argues that the district court demonstrated an actual bias against Hill by: (1) allowing a state witness to testify when the defense had only twenty-four hours notice of that witness; (2) allowing the state to question a witness about a document that the defense had not seen beforehand; (3) allegedly informing the jury that the defense was attempting to mislead it; (4) allegedly demeaning a defense expert psychologist for not being a medical doctor; and (5) disallowing the defense to present certain allegedly mitigating evidence through the expert psychologist. The record belies Hill's allegation.

Fifth, Hill alleges that the jury instructions that aggravating circumstances must be found unanimously, that mitigating factors

need not be found unanimously, and that the death penalty is never mandatory were insufficient. This claim lacks legal support. Geary v. State, 114 Nev. 100, 952 P.2d 431 (1998); Jimenez v. State, 112 Nev. 610, 624, 918 P.2d 687, 695-96 (1996).

Finally, Hill's claim that the district court and the three-judge panel failed to consider the mitigating evidence is belied by the record.

## CONCLUSION

We conclude that none of the allegations Hill properly raised in this appeal have merit. Further, we conclude that both the jury and the three-judge panel determined that Hill was the actual perpetrator of Altonia's murder and that sufficient evidence exists for such a determination. Finally, we reject those claims asserted for the first time in this appeal because Hill has failed to demonstrate sufficient cause and prejudice. Accordingly, we affirm the district court's order denying post-conviction relief.