IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES EARL HILL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74631

**FILED**

OCT 2 3 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting in part and denying in part a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

Appellant James Hill filed his petition on September 25, 2001, roughly 15 years after issuance of the remittitur on direct appeal. *Hill v. State*, 102 Nev. 377, 724 P.2d 734 (1986). Thus, Hill's petition was untimely filed. *See* NRS 34.726(1). Hill's petition was also successive because he had previously litigated a postconviction petition for a writ of habeas corpus, *see Hill v. State*, 114 Nev. 169, 953 P.2d 1077 (1998), and it constituted an abuse of the writ as he raised claims new and different from those raised in his previous petition. *See* NRS 34.810(1)(b)(2); NRS 34.810(2). Hill's petition was procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b), (3). Hill argues that the district court erred in denying his petition as procedurally barred.

*Good cause*

Hill concedes that he filed his petition more than one year after both the conclusion of his first postconviction proceeding and his discovery of the evidence supporting his claims. Nevertheless, he argues that he filed within a reasonable time as this court had not yet applied the one-year period in NRS 34.726(1) to successive petitions when he filed his second

petition in 2001. He also asserts that the litigation of his federal petition prevented him from filing his second state petition sooner. We conclude that these arguments lack merit. Hill filed his petition over eight years after the effective date of NRS 34.726. *See* 1991 Nev. Stat., ch. 44, § 33, at 92. NRS 34.726 unambiguously sets forth the time limit for filing *any* petition that challenges the validity of a judgment of conviction and sentence. Nothing in NRS 34.726(1) suggests that it does not apply to a successive petition. Also, this court had noted the one-year time limit in NRS 34.726 to a successive petition in *Bennett v. State*, 111 Nev. 1099, 1103, 901 P.2d 676, 679 (1995), six years before Hill filed his second petition in 2001. *See Pellegrini v. State*, 117 Nev. 860, 869 n.10, 34 P.3d 519, 526 n.10 (2001), *abrogated on other grounds by Rippo v. State*, 134 Nev. 411, 423 n.12, 423 P.3d 1084, 1097 n.12 (2018). Further, Hill's litigation of his federal petition during the relevant time does not amount to good cause. *See Colley v. State*, 105 Nev. 235, 235, 773 P.2d 1229, 1230 (1989), *superseded by statute on other grounds as stated in State v. Huebler*, 128 Nev. 192, 197 n.2, 275 P.3d 91, 95 n.2 (2012). Therefore, the district court did not err in finding that Hill did not file his petition within a reasonable time.

Hill argues that the ineffective assistance of postconviction counsel provided good cause to excuse the delay in filing. We disagree. As Hill did not file his petition within a reasonable time after the disposition of his prior petition, the allegation of ineffective assistance of postconviction counsel is itself procedurally barred and would not provide good cause. *See Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003).

Hill also argues that the State's failure to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), constitutes good

cause. He asserts that the State failed to disclose evidence that detectives knew he was illiterate when he elected to speak with them as well as evidence that undermined the testimony of the State's witnesses, particularly, Leroy Matthews. However, Hill concedes that he discovered the evidence supporting the alleged *Brady* violation over one year before he filed the instant petition. Thus, this allegation is itself procedurally barred, *see Hathaway*, 119 Nev. at 252, 71 P.3d at 506, and the district court did not err in determining that it did not provide good cause.

*Fundamental miscarriage of justice*

Next, Hill argues that he is entitled to review of the defaulted claims, as not doing so would result in a fundamental miscarriage of justice. *Mazzan v. Warden*, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996). To demonstrate a fundamental miscarriage of justice, a petitioner must make a colorable showing of actual innocence. *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner demonstrates actual innocence by showing that "it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also Pellegrini*, 117 Nev. at 887, 34 P.3d at 537; *Mazzan*, 112 Nev. at 842, 921 P.2d at 922. This is a "demanding" standard that "permits review only in the extraordinary case." *Berry v. State*, 131 Nev. 957, 969, 363 P.3d 1148, 1156 (2015) (internal quotation marks omitted).

First, Hill argues that evidence of his intellectual disability and its effects on his ability to consent to speak to police, participate in the crime, or resist his compatriot's insistence that he participate in the crime

constitutes new evidence of his innocence. We disagree for two reasons. First, Hill's cognitive impairment was known at the time of trial and presented as mitigation evidence during the penalty hearing; thus, it cannot constitute "new" evidence. *See House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup*, 513 U.S. at 324)). Second, the evidence of his intellectual disability and new declarations undercutting witness testimony at trial does not make it more likely than not that no reasonable juror would have convicted him, given the other evidence of guilt. *See Berry*, 131 Nev. at 968, 363 P.3d at 1155 (explaining that the question is "whether the new evidence, considered in light of all the evidence at trial, would support a conclusion that the petitioner has met the actual-innocence test"). At trial, Leroy Matthews testified that Hill and Brian Marshall broke into the apartment Leroy occupied with his wife, Altonia Matthews. Marshall struggled with Leroy while Hill was in the bedroom with Altonia. Altonia, who was paralyzed from a prior stroke, reported to medical personnel that someone had inserted a stick into her body. She later died as a result of her injuries from that abuse. Another person who lived in the same apartment complex, Lavone Kelly, testified that she had spoken with Hill and Marshall before the burglary and saw them emerge from the Matthews' apartment after it. Considering that evidence, the "new" evidence of Hill's intellectual disability does not undermine confidence in the result of the trial.

Second, Hill argues that new evidence undermines Leroy's testimony, possibly implicating him in a conspiracy leading to the assault of Altonia. Hill points to evidence that Leroy and Marshall knew each other

and Leroy may have purchased life insurance for Altonia before the murder. We conclude that this evidence does not meet the demanding actual-innocence standard. The evidence that Leroy knew Marshall before the burglary is not new; Leroy acknowledged during cross-examination at trial that he knew Hill and Marshall before the burglary. Further, it is not likely that any reasonable juror would have a reasonable doubt about Hill's culpability as to the charge of felony murder in the first degree based on new evidence that Leroy mistreated Altonia and purchased life insurance, given Hill's statement to detectives admitting that he entered the residence to steal a television set.

Third, Hill argues that new evidence impeaches Kelly's testimony that she saw Hill adjusting his pants upon exiting the Matthews' apartment, which he contends implicated him in the sexual nature of Altonia's assault. The new evidence is a declaration stating that Kelly could not see Hill very well because Hill was behind Marshall. We conclude that this evidence also does not meet the demanding actual-innocence standard. While Kelly's new declaration differs from her trial testimony as to whether Hill was adjusting his pants when she saw him, she still maintains that she saw Hill emerge from the Matthews' apartment on the night of the burglary. And the point on which the declaration differs from the trial testimony—whether Hill was adjusting his pants when he left the Matthews' apartment—is of little import with respect to the sexual assault allegation given the nature of the sexual penetration reported by Altonia. Accordingly, Hill failed to demonstrate that no reasonable juror would have convicted him given this new evidence.

*Laches*

As Hill failed to demonstrate a fundamental miscarriage of justice, he did not overcome the presumption of prejudice to the State. *See* NRS 34.800(1)(b).

Having considered Hill's contentions and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

cc:    Chief Judge, Eighth Judicial District Court
Federal Public Defender/Las Vegas
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk