# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID STEPHEN MIDDLETON,
Appellant,
vs.
WILLIAM A. GITTERE, WARDEN,
Respondent.

No. 81217

FILED

DEC 02 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant David Middleton's postconviction petition for a writ of habeas corpus.[1] Second Judicial District Court, Washoe County; David A. Hardy, Judge.

Middleton was convicted by jury verdict in 1997 of numerous felony offenses related to the abduction and killing of two women, Katherine Powell and Thelma Davila. Specifically, the jury found Middleton guilty of two counts of first-degree murder, two counts of first-degree kidnapping, one count of grand larceny, one count of fraudulent use of a credit card, and two counts of felon in possession of a firearm. The jury sentenced Middleton to death for each murder. Over the ensuing years, this court affirmed the judgment of conviction and district court orders denying two postconviction habeas petitions. *See Middleton v. Warden (Middleton III)*, No. 62869, 2016 WL 7407431 (Nev. Dec. 21, 2016) (Order of Affirmance); *Middleton v. State (Middleton II)*, Docket No. 50457 (Nev. June 16, 2009) (Order of Affirmance); *Middleton v. State (Middleton I)*, 114 Nev. 1089, 968 P.2d 296 (1998). Middleton filed a third postconviction habeas petition in 2014,

---

[1]Appellant filed a motion to consolidate this appeal with an original petition for a writ of mandamus also pending before this court. *See Middleton v. Dist. Court*, No. 85637. Having considered the motion and the State's opposition, we decline to consolidate these matters.

22-37984

which the district court dismissed as procedurally barred. This appeal followed.

Middleton's petition included claims that were untimely, given that he raised them roughly 16 years after this court issued its remittitur on direct appeal. NRS 34.726(1). The petition also included claims that were successive because he previously litigated two postconviction habeas petitions, and claims constituting an abuse of the writ because they could have been litigated in the prior postconviction habeas petitions. NRS 34.810(1)(b)(2); NRS 34.810(2). Accordingly, the claims were subject to dismissal absent a showing of good cause and actual prejudice, NRS 34.726(1); NRS 34.810(1)(b), (3), or that the failure to consider the claims would result in a fundamental miscarriage of justice, which standard is met when the petitioner makes a colorable showing of actual innocence, *Berry v. State*, 131 Nev. 957, 966, 363 P.3d 1148, 1154 (2015). The latter gateway to consideration of a procedurally barred claim requires the petitioner to present new evidence of his factual innocence. *See House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)); *Berry*, 131 Nev. at 966, 363 P.3d at 1154 (discussing actual-innocence inquiry). The actual-innocence gateway is demanding and will result in review only in extraordinary cases. *Berry*, 131 Nev. at 969, 363 P.3d at 1155. Determining whether a petitioner should be granted an evidentiary hearing on an actual-innocence gateway claim "is a highly factual inquiry" that considers all the

evidence—the new evidence and the evidence produced at trial.[2] *Id.* at 968, 363 P.3d at 1155; *see also House*, 547 U.S. at 537-38 (recognizing that a court addressing merits of actual-innocence inquiry must do so "on a fully developed record").

*Claims related to the Davila murder conviction*

Middleton alleged in his petition that the State presented unreliable DNA evidence and testimony linking Davila to a storage unit rented by Middleton. To support that allegation, Middleton pointed to evidence allegedly withheld by the State in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)—a forensic report as to evidence recovered from a roll of duct tape and impeachment evidence about the individual who interpreted the preliminary hearing testimony of a witness who identified clothing seized from the storage unit as belonging to Davila. He contends that the *Brady* violation establishes good cause and actual prejudice and that the failure to consider these claims and the new evidence would result in a fundamental miscarriage of justice. We disagree.

---

[2]Because the inquiry for purposes of the actual-innocence gateway requires examination of both the new evidence and the trial evidence, the trial transcripts generally will be necessary for this court's review. Although it was Middleton's responsibility to provide the record necessary for our review of the issues he has raised on appeal, NRAP 30(b)(1); *Thomas v. State*, 120 Nev. 37, 43 n.4, 83 P.3d 818, 822 n.4 (2004); *see also Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."), he did not provide the complete trial transcripts in his appendices. Thus, in considering Middleton's arguments with respect to the actual-innocence gateway, we have considered the limited record provided and otherwise have assumed that the omitted parts of the trial record support the district court's decision. *See Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) ("[T]he missing portions of the record are presumed to support the district court's decision."), *rev'd on other grounds*, 504 U.S. 127 (1992).

*Brady* obliges a prosecutor to reveal evidence favorable to the defense when that evidence is material to guilt, punishment, or impeachment. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). A *Brady* violation thus has three prongs: "(1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) prejudice ensued, i.e., the evidence was material." *State v. Huebler*, 128 Nev. 192, 198, 275 P.3d 91, 95 (2012) (internal quotation marks omitted). The second and third prongs of a *Brady* violation parallel the showings of good cause and prejudice required when the claim is raised in a procedurally barred petition. *Id.*

*Middleton's allegations based on the allegedly withheld forensic report are not sufficient to establish good cause and prejudice or actual innocence*

Middleton argues that DNA evidence linking Davila to the storage unit based on hair found on a roll of duct tape was unreliable because initial inspections of the roll of duct tape did not indicate the presence of hair, the chain of custody had gaps, and the results of the DNA analysis were inconsistent. He asserts that the State withheld a forensic report by analyst Charles Lowe, which Middleton assumes showed no result for hair because a detective asked for the evidence to be examined multiple times.

The allegations about the reliability of the DNA evidence largely reargue claims Middleton raised in prior proceedings. The single new allegation is based on a hoped-for conclusion that a forensic report exists that proves no hair was present on the duct tape when it was seized and that the report was withheld by the State. But Middleton did not include the allegedly withheld forensic report in his pleadings or allege

sufficient facts to suggest it exists. Such a speculative allegation could have been levelled at any time, even during trial, and thus does not amount to good cause. *See Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). And it is insufficient to demonstrate that the State withheld material evidence for purposes of a *Brady* violation or to establish good cause or prejudice based on a *Brady* violation. *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000).

Middleton's actual-innocence gateway argument also falls short. Again, he has not offered any new *evidence* of factual innocence; instead, he offers speculation and hoped-for conclusions. Relatedly, he does not argue on appeal that no reasonable juror would have convicted him in light of *new* evidence, as required for a gateway claim of actual innocence. *Berry*, 131 Nev. at 966, 363 P.3d at 1154. Instead, he focuses on the DNA evidence presented at trial and asserts that it was "thin" or insufficient and repeatedly references how he was prejudiced by the admission of unreliable DNA evidence. Those arguments are insufficient to demonstrate that the district court erred in concluding that Middleton did not establish actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 345 n.13 (1992) ("If a showing of actual innocence were reduced to actual prejudice, it would allow the evasion of the cause and prejudice standard which we have held also acts as an 'exception' to a defaulted, abusive, or successive claim[;] [i]n practical terms a petitioner would no longer have to show cause, contrary to our prior cases."); *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) ("Actual innocence means factual innocence, not mere legal insufficiency." (internal quotation marks omitted)). But even crediting Middleton's allegations about the allegedly withheld forensic report, we are not convinced the district court erred. Considering the hoped-for content of

the allegedly withheld forensic report in light of all the evidence at trial, there is no support for a conclusion that Middleton met the actual-innocence test—"that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Berry*, 131 Nev. at 966, 363 P.3d at 1154 (quoting *Schlup*, 513 U.S. at 327). The "new evidence" at most undermines the trial evidence that Davila's hair was found on a roll of duct tape seized from Middleton's storage unit. But significant other trial evidence linked Davila to Middleton and his storage unit, as recited in *Middleton I*: Davila was seen with Middleton and Haley before her disappearance; Middleton was seen outside Davila's home on the morning she disappeared; Middleton had rented a storage unit under a fictitious name and moved into a larger unit when Davila disappeared; Davila's clothing was later recovered in that unit; and her hair was also found on a plaid purple blanket recovered in the storage unit.[3] 114 Nev. at 1098-99, 968 P.2d at 303-04. Therefore, the district court did not err in denying this claim as procedurally barred.

*Middleton's allegations based on the allegedly withheld impeachment evidence are not sufficient to establish good cause and prejudice or actual innocence*

Middleton argues that the State withheld unfavorable information about Carlos Gonzalez, who interpreted for Davila's sister,

---

[3]To the extent Middleton asserts that the testimony placing him at Davila's apartment and the other hair evidence were unreliable, he provides no new evidence to support that assertion. And to the extent he attempts to relitigate the claims related to that evidence raised in his second postconviction habeas petition (that the chain of custody as to the hair recovered from the blanket was so defective as to render the DNA evidence inadmissible and that witnesses were alone with the evidence and could have tampered with it), we previously rejected those claims in *Middleton III*, and he has not shown good cause for relitigating these claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Dora Valverde, during the preliminary hearing. He asserts that Gonzalez's prior sex offense convictions, recent Nevada convictions for falsifying his qualifications and other instances of fraud, statements during his sentencing proceedings, and billing records constitute new evidence that could have impeached Valverde's testimony.

Information about Gonzalez's prior conviction was publicly available at the time of Middleton's trial in 1997. Middleton thus cannot demonstrate good cause for his delay in raising a claim based on that information. *See Hathaway*, 119 Nev. at 252, 71 P.3d at 506 (noting that good cause exists if an impediment external to the defense prevented compliance with state procedural rules, including because the legal or factual basis of the claim was not reasonably available). More importantly, Middleton fails to demonstrate prejudice or a *Brady* violation because the information about Gonzalez is not material to guilt or punishment. *See Huebler*, 128 Nev. at 198, 275 P.3d at 95 (explaining that the third prong of a *Brady* violation requires a showing that the evidence is material to guilt or punishment, which parallels the prejudice showing required to excuse a procedural bar). Valverde testified at trial through a different interpreter, and her trial testimony about discovering Davila missing and identifying Davila's property was consistent not only with her preliminary hearing testimony but also with her earlier statements to police. Her identification of Davila's clothing was also consistent with another witness's testimony. Thus, evidence impeaching Gonzalez's translation of Valverde's preliminary hearing testimony would have had little effect on the jury's weighing of

Valverde's credibility or its guilty verdict.[4] For the same reasons, Middleton cannot meet the actual-innocence test based on the information about Gonzalez. Therefore, the district court did not err in denying this claim as procedurally barred.

*Middleton's allegations based on the State's motion to withdraw exhibits for DNA testing are not sufficient to establish prejudice or actual innocence*

Middleton argues that he is actually innocent of Davila's murder because the witness identifications of Davila's clothing are unreliable, and that his girlfriend, Evonne Haley, may be more responsible for the crime in light of the State's 2014 request to conduct DNA testing on clothing seized from Middleton's storage unit in an effort to link Middleton and Haley to other murders. He contends that the State's testing request suggests that it doubts the original clothing identifications, so if this court declines to consider his claim, he would be prejudiced. Middleton further argues that this new evidence establishes his actual innocence. We disagree.

The State's request for additional DNA testing does not suggest that the State doubts the trial testimony identifying Davila's clothing. Quite the contrary. The request stemmed from anonymous letters received by law enforcement in another state that suggested Middleton and Haley participated in additional murders. Based on the allegations in those letters, the State sought additional, more-advanced testing to determine if it could detect DNA from other victims on clothing seized from Middleton's storage unit. The State's request thus does not undermine confidence in the

---

[4]Middleton argues that "it is impossible to discern what was wrong with the interpretations" and does not identify any specific instances in which Gonzalez's interpretations were inaccurate.

verdict given that the anonymous letters that prompted the request *inculpate* Middleton—they state that Middleton was involved in the two murders for which he was convicted as well as another in Nevada and several in other jurisdictions. *See Lay v. State*, 110 Nev. 1189, 1197, 886 P.2d 448, 453 (1994) (defining exculpatory evidence as evidence that "explain[s] away the charge[s]").

Middleton further fails to meet the actual-innocence test based on the State's request and the anonymous letters. Again, the anonymous letters do not undermine confidence in the trial outcome. *See Berry*, 131 Nev. at 968-69, 363 P.3d at 1156 (recognizing that "the district court may make some credibility determinations based on the new evidence in determining whether to conduct an evidentiary hearing"). The letters do not position Haley as an alternate suspect, just as a participant *with* Middleton. In that respect, the letters are consistent with trial evidence that suggested her involvement in the crimes, including evidence that placed her near one of the victim's homes, with another victim, and using a victim's credit card. *Middleton I*, 114 Nev. at 1095, 1098, 968 P.2d at 301, 303. And even if the letters insinuate that Haley was more involved than the trial evidence suggested, that insinuation does not support a conclusion or inference that Middleton was less culpable than the trial evidence established. As Middleton has not shown the failure to consider his claim would result in a fundamental miscarriage of justice, the district court did not err in dismissing this claim without conducting an evidentiary hearing.[5]

_____

[5]As Middleton did not demonstrate good cause and prejudice or the failure to consider any of these claims amounted to a fundamental miscarriage of justice, the cumulative consideration of these claims does not

*Claim that new bite mark evidence undermines the conviction and sentence for Powell's murder*

Dr. Raymond Rawson testified at Middleton's trial that a wound found "on Powell's breast was inflicted while she was still alive, that it was a hard and painful bite causing bleeding below the skin, and that Middleton inflicted it." *Id.* at 1097, 968 P.2d at 302. Middleton argues that new evidence shows that Dr. Rawson's bite-mark-identification testimony, which implicated him in Powell's killing and supported the torture aggravating circumstance, was based on "junk science." He asserts that absent this testimony, there is a reasonable probability of a different outcome at both the guilt and penalty phases of trial.

The alleged good cause for challenging the bite-mark-identification testimony now relies on asserted changes in professional norms with respect to such testimony and reports of convictions based on bite-mark-identification testimony being overturned. Although Middleton represents that this changed landscape with respect to bite-mark-identification testimony came to a head around 2013 or 2014, we are convinced he could have raised this claim earlier. Convictions based on bite mark evidence, even ones that had involved Dr. Rawson, had been

---

excuse the procedural bars to claims challenging his convictions related to Davila's murder.

We also deny Middleton's motion for limited remand to conduct genetic marker testing on items of clothing identified at trial as belonging to Davila. Middleton did not seek to conduct genetic marker testing on evidence while his petition was pending below and did not assert any claims or good cause based on new evidence as a result of genetic marker testing. Accordingly, new evidence developed from this testing would constitute new claims or arguments raised for the first time on appeal. *See McNelton v. State*, 115 Nev. 396, 416, 990 P.2d 1263, 1276 (1999) (declining to address claims raised for the first time on appeal).

SUPREME COURT
OF
NEVADA

(O) 1947A

10

overturned as early as 2002 based on concerns about the reliability of bite-mark-identification testimony. *See* Radley Balko, *Forensics Fraud?*, Reason (Apr. 2009), https://reason.com/2009/03/24/forensics-fraud (noting the Kennedy Brewer exoneration and describing infirmities in bite mark evidence comparison techniques as they related to the prosecution of Jimmie Duncan); Flynn McRoberts, *Bite-mark verdict faces new scrutiny, Release of other Death Row inmate prompts Arizona to order DNA tests*, Chi. Trib., Nov. 29, 2004, 2004 WLNR 19819892 (describing how exoneration of Ray Krone prompted court to grant review of Robert Tankersley's motion for DNA testing and that Dr. Rawson had testified about bite mark evidence in both cases); Maurice Possley, *Old case, new research test validity of bite-mark evidence*, Chi. Trib., July 20, 2008, 2008 WLNR 13622669 (describing exoneration of Robert Stinson, at whose trial Dr. Rawson testified for the state); Daniele Selby, *Why Bite Mark Evidence Should Never Be Used in Criminal Trials*, Innocence Project, Apr. 26, 2020, https://innocenceproject.org/what-is-bite-mark-evidence-forensic-science (describing successful challenges to convictions of Levon Brooks and Kennedy Brewer, whose convictions were based largely on bite mark evidence, were overturned in 2008). And scholarly articles called forensic bite mark evidence into doubt well before 2014. *See* Nat'l Res. Council, Strengthening Forensic Science in the United States: A Path Forward 173-76 (2009), https://nap.nationalacademies.org/catalog/12589/strengthening-forensic-science-in-the-united-states-a-path-forward; *see, e.g.*, Erica Beecher-Monas, *Reality Bites: The Illusion of Science in Bite-Mark Evidence*, 30 Cardozo L. Rev. 1369, 1371 (2009) ("The science behind bite-mark testimony is murky at best."); Elizabeth L. DeCoux, *The Admission of Unreliable Expert Testimony Offered by the Prosecution: What's Wrong with*

Daubert *and How to Make it Right*, 2007 Utah L. Rev. 131, 147 (2007) ("The reliability of identification based on bite-marks found on human skin is highly questionable."). Accordingly, a challenge to the bite-mark-identification testimony was reasonably available long before Middleton filed his petition in 2014, and thus, there is no good cause for Middleton's failure to present this claim earlier. *See Huebler*, 128 Nev. at 198 n.3, 275 P.3d at 95 n.3 (indicating that a petitioner must seek postconviction relief "within a reasonable time after" discovering a claim's factual predicate).

Middleton also did not meet the actual-innocence test with respect to the murder conviction or the torture aggravating circumstance. Even crediting Middleton's challenge to the expert's bite-mark-identification testimony as unreliable, ample other evidence supports Middleton's conviction for Powell's murder. Powell's hair and DNA were found in Middleton's storage unit, material and fibers found with her body were consistent with items found in Middleton's storage unit, her property and items purchased with her credit card were discovered in Middleton's storage unit, and Middleton's DNA was found on Powell's remains. *Middleton I*, 114 Nev. at 1094-95, 1099-1100, 968 P.2d at 300-01, 304. In addition, Middleton does not challenge the testimony that the wound was inflicted while Powell was alive and that inflicting that injury would have caused substantial pain. And evidence showing that Middleton held Powell in the storage unit for the purpose of torturing her before killing her at least circumstantially supports an inference that he inflicted the wound. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Claim based on the State's failure to disclose evidence that Haley was an alternate suspect in both murders*

Based on the anonymous letters forwarded to the Washoe County Sheriff's Office in 2014, Middleton argues that the State withheld evidence that it believed Haley was an alternate suspect in the killings of Davila and Powell. He contends that this evidence undermines confidence in the convictions and death sentences as it shows that he was less culpable for the crimes.

The anonymous letters are not favorable to the defense. To the contrary, they are inculpatory and consistent with evidence introduced at trial. Trial testimony strongly suggested Haley helped Middleton lure and abduct the victims as she had been seen socializing with Davila on three occasions and outside Powell's apartment with Middleton shortly before her abduction, and she used Powell's credit cards. Haley's statements memorialized in the letters acknowledge her participation consistent with the trial evidence. The statements even inculpated Middleton and Haley in additional abductions and murders in Nevada and other states. Nothing in the letters "explain[s] away the charge[s]" for which Middleton was convicted or even suggests he is less culpable. *Lay*, 110 Nev. at 1197, 886 P.2d at 453; *see also Huebler*, 128 Nev. at 200 n.5, 275 P.3d at 96 n.5 (defining exculpatory evidence as evidence that tends to establish innocence). Middleton thus cannot show that he will suffer prejudice if this court does not consider the claim. And considering the inculpatory information in the letters and the evidence presented at trial, he has not met the actual-innocence test with respect to the convictions or death sentences based on the information in the letters. Accordingly, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Cumulative error*

Middleton argues that he is entitled to relief based on the cumulative effect of errors. He contends that the district court should have considered several claims that he raised on direct appeal and in his prior petitions. He asserts that those claims must be considered again so that their cumulative effect is considered with new claims for which he can avoid the procedural bars.

As discussed above, Middleton did not allege sufficient circumstances to avoid the procedural bars to the new claims raised in the instant petition. And he did not allege any circumstances to avoid the procedural bars that apply to the claims that were previously raised and rejected other than to assert that they must be considered with the new claims to assess the cumulative effect of the claimed errors. But claims that have been rejected in prior proceedings cannot be relitigated to support a cumulative error claim. *See Rippo v. State*, 134 Nev. 411, 436, 423 P.3d 1084, 1107 (2018) (rejecting argument that courts need to consider cumulative effect of errors as good cause where prior claims were rejected on the merits); *In re Reno*, 283 P.3d 1181, 1223-24 (Cal. 2012) (rejecting "cumulative error" as good cause where prior claims were rejected on the merits). Accordingly, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Statutory laches*

The State also pleaded laches. Because Middleton's petition was filed more than five years after remittitur issued on direct appeal, NRS 34.800(2) imposes a rebuttable presumption of prejudice to the State. The statute identifies two types of prejudice that must be rebutted by the petitioner: (1) prejudice to the State "in responding to the petition, unless

 

the petitioner shows that the petition is based upon grounds of which the petitioner could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred," NRS 34.800(1)(a), and (2) prejudice to the State in its ability to retry the petitioner, "unless the petitioner demonstrates that a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence," NRS 34.800(1)(b). Notably, NRS 34.800 operates independently of the procedural bars in NRS 34.726 and NRS 34.810; as a result, a petition could be dismissed under NRS 34.800 even though a petitioner has shown good cause and actual prejudice to satisfy NRS 34.726 and NRS 34.810. *See Berry*, 131 Nev. at 974, 363 P.3d at 1159 (noting that a claim would be barred by laches under NRS 34.800 absent a showing of a fundamental miscarriage of justice, so "a showing of good cause and actual prejudice [would] be immaterial"). As noted above, Middleton has not demonstrated a fundamental miscarriage of justice, and he has not argued that he rebutted the presumption of prejudice to the State in its ability to retry him. *See Howard v. State,* 137 Nev., Adv. Op. 48, 495 P.3d 88, 92 n.4 (2021) (recognizing "that a successful actual-innocence-gateway claim would necessarily satisfy the showing required under NRS 34.800(1)(b)"). Accordingly, the district court did not abuse its discretion in applying statutory laches to dismiss Middleton's petition. *See Chappell v. State,* 137 Nev., Adv. Op. 83, 501 P.3d 935, 961 (2021) (reviewing application of statutory laches for abuse of discretion).

*Denial of evidentiary hearing and motion to conduct discovery*

Middleton argues that the district court should have permitted discovery and held an evidentiary hearing on his claims. We discern no abuse of discretion. *See Berry*, 131 Nev. at 969, 363 P.3d at 1156 (reviewing

a district court's decision to grant or deny a petitioner's request for an evidentiary hearing for an abuse of discretion); *Means v. State*, 120 Nev. 1001, 1007, 103 P.3d 25, 29 (2004) (reviewing a district court's resolution of discovery issues for an abuse of discretion). As discussed above, Middleton did not allege sufficient facts, even if proven at an evidentiary hearing, to avoid the procedural bars. As such, he did not demonstrate good cause to conduct discovery. *See* NRS 34.780(2) ("After the writ has been granted and a date set for the hearing, a party may invoke any method of discovery available under the Nevada Rules of Civil Procedure if, and to the extent that, the judge or justice for good cause shown grants leave to do so.").[6]

*Denial of motion to have expert present during DNA testing*

Middleton argues that the district court erred in denying his motion to have an expert present when the new DNA tests were conducted on clothing seized from his storage unit. We disagree. Although there is some authority for the proposition that a court may permit a defense representative to attend DNA testing when that testing is likely to consume an entire sample, *see, e.g., Hooks v. State*, 956 So. 2d 515, 516 (Fla. Dist. Ct. App. 2007), Middleton did not allege that the testing will consume the entire sample or that he would be unable to conduct his own analysis. Further, because his request was raised in a postconviction proceeding where he

---

[6]Middleton asserts that he alleged sufficient facts to warrant an evidentiary hearing on a claim related to the photo array shown to Lucille Pooler, who identified Middleton as the man she saw outside Davila's apartment on the morning of her disappearance. This contention is not properly before this court because Middleton did not include this claim in his postconviction petition below. *See Hill v. State*, 114 Nev. 169, 178, 953 P.2d 1077, 1084 (1998) (recognizing that appellate courts generally decline to consider issues on appeal that were not raised in postconviction petitions in district court).

failed to allege sufficient circumstances to warrant an evidentiary hearing and discovery, he has not demonstrated that his own expert's presence is warranted for the continued litigation of his postconviction petition. Accordingly, the district court did not abuse its discretion in denying his motion. *See Means*, 120 Nev. at 1007, 103 P.3d at 29.

*Relitigation of motion to disqualify Washoe County District Attorney's Office*

Middleton argues that the district court abused its discretion in denying his motion to disqualify the Washoe County District Attorney's Office (WCDA). The district court denied the motion because Middleton's request to disqualify the WCDA had been rejected previously, including by this court in connection with motion practice in *Middleton III*. When Middleton initiated an original proceeding before this court challenging the district court's decision, we again rejected Middleton's effort to disqualify the WCDA. *Middleton v. Second Judicial Dist. Court*, No. 78468, 2019 WL 5109616 (Nev. Oct. 11, 2019) (Order Denying Petition). Middleton now complains that in denying his repeated efforts to disqualify the WCDA, the district court and this court erred in not addressing the federal constitutional objections he raised and that this court erred in declining to revisit the standard set forth in *State v. Eighth Judicial Dist. Court (Zogheib)*, 130 Nev. 158, 321 P.3d 882 (2014), which he complains does not consider the appearance of impropriety as a basis for imputed disqualification of a district attorney's office.

Middleton has not demonstrated that the district court abused its discretion. *See Tomlin v. State*, 81 Nev. 620, 624, 407 P.2d 1020, 1022 (1965). The district court did not ignore any controlling federal authority cited by Middleton. Notably, the only federal authority Middleton cited in his motion to disqualify was *United States v. Schell*, 775 F.2d 559, 566 (4th Cir. 1985), which is not binding authority in Nevada. *See Blanton v. N. Las*

Supreme Court
of
Nevada

(O) 1947A

17

*Vegas Mun. Court*, 103 Nev. 623, 633, 748 P.2d 494, 500 (1987) ("[D]ecisions of the federal district court and panels of the federal circuit court of appeal are not binding upon this court."). That case is also distinguishable as the individual member of the WCDA who was disqualified (Joseph Plater) never established an attorney-client relationship with Middleton and did not participate in Middleton's prosecution, unlike the circumstances at issue in *Schell.* 775 F.2d at 562. Therefore, the district court did not err in denying the motion. And Middleton's challenges to our prior decisions with respect to his efforts to disqualify the WCDA are out of order; any contention that this court overlooked arguments or failed to apply controlling precedent in the prior proceedings should have been raised in a petition for rehearing under NRAP 40(c).

Having reviewed Middleton's contentions and concluded that they do not warrant relief, we

ORDER the judgment of the district court AFFIRMED.[7]

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

---

[7]The Honorable Abbi Silver having retired, this matter was decided by a six-justice court.

cc:    Hon. David A. Hardy, District Judge
Federal Public Defender/Las Vegas
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A