IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM JOHN KECK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79815

FILED

APR 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying appellant William John Keck's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Keck cut through his estranged wife's apartment door with a chainsaw and fired an assault rifle into her home. The bullets struck both his wife, Angel Reyes, and her boyfriend, Jonathan Lestelle. Lestelle was killed and Reyes lost her unborn child as a result of her injuries. A jury found Keck guilty of first-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, manslaughter of an unborn quick child, attempted burglary while in possession of a deadly weapon, and assault with the use of a deadly weapon and sentenced him to death for the murder. This court affirmed the convictions and death sentence on appeal. *Keck v. State*, Docket No. 61675 (Order of Affirmance, April 21, 2015). Keck filed a timely postconviction petition for a writ of habeas corpus alleging that he received ineffective assistance of counsel, which the district court denied after conducting an evidentiary hearing. In this appeal, Keck claims that the district court erred in rejecting his ineffective-assistance claims and that cumulative error warrants reversal. We affirm.

21-10277

*Ineffective assistance of counsel*

"A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015), but the district court's purely factual findings are entitled to deference, *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004). To prove ineffective assistance, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness (deficient performance) and (2) a reasonable probability of a different outcome but for counsel's deficient performance (prejudice). *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 923 P.2d 1102, 1107 (1996). To prove prejudice based on appellate counsel's deficient performance, a petitioner must show that but for counsel's errors, the omitted issue would have had a reasonable probability of success on appeal. *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114. The petitioner must demonstrate the underlying facts by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). A court need not consider both prongs of the *Strickland* test if a petitioner makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697.

*Expert testimony*

Keck argues that trial counsel should not have elicited unfavorable evidence from the defense psychological expert. Relying on *Buck v. Davis*, 137 S. Ct. 759 (2017), he argues that information about his fantasies and behavior established his dangerousness, would not have otherwise been admissible, and was particularly damaging.

The district court's conclusion that counsel was not ineffective is supported by substantial evidence. Keck's counsel made a strategic

SUPREME COURT
OF
NEVADA

(O) 1947A

2

decision to present psychiatric evidence. *See McNelton v. State*, 115 Nev. 396, 410, 990 P.2d 1263, 1273 (1999) (recognizing that the decision regarding what mitigation evidence to present is a tactical one entrusted to defense counsel). Keck's trial counsel understood that psychiatric mitigation evidence risked portraying Keck as repellent or a future danger. *See Lisle*, 131 Nev. at 367, 351 P.3d at 733 (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness that merits the death penalty"); *see also Brewer v. Quarterman*, 550 U.S. 286, 292-93 (2007) (recognizing that psychiatric mitigation evidence could both lessen defendant's culpability and show the defendant's future dangerousness). Counsel nevertheless believed that providing a comprehensive basis for the defense expert's opinion that Keck suffered from mental illness made that opinion more credible and was necessary to show that Keck was not malingering. Thus, unlike the evidence in *Buck*, which posited that Buck was a future danger based on his race, 137 S. Ct. at 775-77, the psychiatric testimony here supported trial counsel's mitigation strategy and was not overwhelmingly prejudicial or patently unconstitutional. And based on the evidence available at trial, it appears that counsel's strategy was objectively reasonable. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (explaining that the court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [an appellant's] counsel may have had for proceeding as they did" (internal quotation marks, alterations, and citations omitted)); *Strickland*, 466 U.S. at 690-91 (recognizing that counsel's tactical decision are virtually unchallengeable absent extraordinary circumstances). Because Keck had a scant criminal history, seemed capable of functioning in society, and had feigned mental illness in

Supreme Court
of
Nevada

(O) 1947A

3

the past in an effort to manipulate his circumstances, counsel believed it was necessary to present examples of his mental illness controlling his behavior. While the details were disturbing, the information was not substantially more damaging than testimony about Keck's behavior leading up to the shooting or his "kills babies" tattoo, and therefore he did not demonstrate prejudice. The district court did not err in denying this claim.

*Seroquel use*

Keck argues that counsel should have investigated and introduced evidence during the guilt or penalty phases linking his violent conduct to the prescription drug Seroquel. He argues that evidence would have supported counsel's argument suggesting a connection.

Keck did not demonstrate deficient performance. Keck's postconviction expert opined that Keck's use of Seroquel had only a statistically minimal probability of causing increased agitation, restlessness, and emotional unease.[1] Given that opinion, Keck did not meet his burden of demonstrating that counsel neglected to investigate a viable defense or mitigation evidence. *See Strickland*, 466 U.S. at 691 (recognizing that counsel must "make reasonable investigations or . . . a reasonable decision that makes particular investigations unnecessary"); *State v. Powell*, 122 Nev. 751, 759, 138 P.3d 453, 458 (2006) (providing that counsel "must make reasonable investigations or a reasonable decision that particular investigations are unnecessary."); *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (recognizing that "counsel is not required to unnecessarily exhaust all available public or private resources" to avoid

---

[1]Keck's expert did not cite any empirical studies that quantified Seroquel's potential for adverse reactions. Instead, he relied on studies that showed that a similar drug, Paxil, had been shown to have a < 1% chance of causing an adverse reaction.

allegations of ineffective assistance); *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (recognizing that decisions regarding which witnesses to investigate and call at trial "are virtually unchallengeable absent extraordinary circumstances"). And it further was not objectively unreasonable for trial counsel to suggest in argument that Seroquel affected Keck's behavior rather than introduce testimony that would undermine that argument by characterizing Seroquel's possible impact as very unlikely. *See McNelton*, 115 Nev. at 410, 990 P.2d at 1273 (recognizing that the decision regarding what mitigating evidence to present is a tactical one).

Keck further did not demonstrate prejudice. The trial evidence showed that Keck threatened his wife weeks before the shooting, assaulted a security guard so that he could continue his assault on his wife's residence, and tried to destroy evidence. Even if he had experienced the aforementioned symptoms due to his use of Seroquel, he did not demonstrate a reasonable probability that the Seroquel evidence would have convinced the jury that he was incapable of premeditation or deliberation before and during the incident.[2] And regarding the penalty, the aggravating circumstances, which were based on Keck cutting into an apartment door, threatening a security guard, and recklessly firing an assault rifle into an apartment wherein his estranged pregnant wife and her boyfriend lived, were compelling. Additional evidence showed that Keck wanted to kill his wife because she was pregnant and had reason to believe Lestelle's child could have been at the apartment. Considering this

---

[2]Keck does not suggest that the Seroquel evidence would have supported a plea of not guilty by reason of insanity. And it does not appear that the evidence Keck presented below would have satisfied the test for insanity—that as the result of a delusional state, he could not understand the nature of his actions or appreciate their wrongfulness. *Finger v. State*, 117 Nev. 548, 576, 27 P.3d 66, 84-85 (2001).

evidence and the mitigation evidence presented at trial, Keck did not demonstrate a reasonable probability of a different outcome had counsel shown that Seroquel may have had a statistically unlikely role in Keck's violent behavior. Therefore, the district court did not err in denying this claim.

*Prosecutorial misconduct*

Keck argues that trial counsel should have objected to an argument by the prosecutor during the penalty phase that improperly implored the jurors to place themselves in the victims' position. He further argues that appellate counsel should have raised this instance of prosecutorial misconduct on appeal.

Keck did not demonstrate deficient performance or prejudice. The challenged comments, taken in context, invited the jury to consider the victims' final moments and did not improperly ask the jurors to put themselves in the victims' place. *See Williams v. State*, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997) (holding that the prosecutor asking the jury to imagine the final moments of the victims' lives was not improper), *overruled on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000). *But see McGuire v. State*, 100 Nev. 153, 158, 677 P.2d 1060, 1064 (1984) (holding that prosecutor's remarks imploring jurors to place themselves in the victim or victim's families' position were improper). Accordingly, there was no basis for trial counsel to object or appellate counsel to challenge the comment, and therefore their performance in this respect did not fall below an objective standard of reasonableness. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) ("Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims."); *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114 (recognizing that appellate counsel is not ineffective for declining to raise meritless issues). Even if the comments

were considered improper, Keck did not demonstrate prejudice given the aforementioned evidence in aggravation and other matter evidence supporting the jury's sentencing decision. *See Strickland*, 466 U.S. at 700 (recognizing that counsel's deficient performance did not likely affect sentencing determination where there was overwhelming evidence supporting the aggravating circumstances).

*Inviting prosecutorial misconduct*

Keck argues that his counsel made improper arguments during closing at the penalty hearing that invited an improper "holiday" argument by the State.[3] He further complains that trial counsel did not object to the State's argument, which prevented appellate counsel from successfully challenging that argument.

Keck has not demonstrated prejudice. This court determined on direct appeal that defense counsel's argument did not open the door to the prosecutor's improper argument. *Keck*, Docket No. 61675, Order of Affirmance at 9. Although trial counsel did not invite the prosecutor's wedding day argument, counsel should have objected to it as the prosecutor's argument was improperly intended to inflame the jury's passions. *Id.* at 8-10; *see Quillen v. State*, 112 Nev. 1369, 1382, 929 P.2d 893, 901 (1996) (recognizing that repeated references to holiday on which murders occurred were appeals to jurors' emotions); *Williams v. State*, 103 Nev. 106, 109, 734 P.2d 700, 702 (1987) (holding that argument linking homicide with Valentine's Day was improper); *Dearman v. State*, 93 Nev. 364, 368-69, 566 P.2d 407, 409-10 (1977) (concluding that statements about

---

[3]Defense counsel framed his closing argument by asking the jurors to imagine being at a hypothetical, future wedding and having to explain their decision to impose a death sentence. In rebuttal, the prosecutor also used a wedding theme but turned it around to Lestelle's son being asked why his father was absent from his hypothetical, future wedding.

victims missing upcoming holidays were likely improper). But, even if trial counsel had preserved the error so that it was reviewed on direct appeal for harmless error rather than plain error, there is no reasonable probability that the outcome of the appeal would have changed. "Holiday" arguments like the prosecutor's wedding scenario in this case "rarely warrant reversal by themselves." *Quillen*, 112 Nev. at 1382, 929 P.2d at 901. And this court already concluded on direct appeal when reviewing the misconduct for plain error that the prosecutor's improper argument did not affect Keck's substantial rights because there was overwhelming evidence in support of the death sentence. *Keck*, Docket No. 61675, Order of Affirmance at 10. As noted above, the aggravating circumstances found by the jury, the evidence supporting those circumstances, and the other matter evidence was compelling. The jury found one mitigating circumstance based on the defense's psychiatric testimony but did not find it outweighed the aggravating circumstances found. Thus, even if this instance of prosecutorial misconduct had been preserved for direct appeal, this court still would have concluded beyond a reasonable doubt that the jury would have made the same sentencing decision absent the prosecutor's improper argument. *See Schoels v. State*, 114 Nev. 981, 989, 966 P.2d 735, 740 (1998) (providing that in evaluating prosecutorial misconduct during the penalty phase, this court "will reverse the conviction or death penalty where the decision between life or death is a close one or the prosecution's case is weak"). Therefore, the district court did not err in denying this claim.

*Juror challenges for cause*

Keck argues that appellate counsel should have argued that the district court erred in denying for-cause challenges to three prospective jurors. Keck also raises the underlying trial error independently from his claim of ineffective assistance of appellate counsel. However, Keck did not

SUPREME COURT
OF
NEVADA

(O) 1947A

demonstrate good cause for failing to raise the trial-error claim on direct appeal or actual prejudice. *See* NRS 34.810(1)(b), (3).

Keck did not demonstrate deficient performance. Even assuming that appellate counsel could have successfully argued that the district court abused its discretion in denying the for-cause challenges, this court would not have granted relief because none of those prospective jurors served on the jury and Keck does not allege that any empaneled juror was unfair or biased.[4] *See Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014) (recognizing that when the district court abuses its discretion in denying a for-cause challenge, reversal is warranted only if the error "results in an unfair empaneled jury"); *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005) ("If the jury actually seated is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his right to an impartial jury."); *see also United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (recognizing that defendant's exercise of peremptory challenge was not impaired when defendant used challenge to remove juror who should have been excused for cause). Therefore, the district court did not err in denying this claim.

*Batson objection*

Keck argues that trial counsel should have made a timely objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), and *J.E.B. v. Alabama*, 511 U.S. 127 (1994), to the State's use of peremptory challenges to remove two Black women from the venire. Had the objection been timely, instead of lodged after the challenged jurors had been dismissed and the jury sworn, Keck argues that this court would not have concluded the issue

[4]Trial counsel used peremptory challenges to remove the three prospective jurors at issue.

was waived, *see Keck*, Docket No. 61675, Order of Affirmance at 5-6, and the issue instead would have met with success on appeal.

We agree that trial counsel should have lodged the *Batson/J.E.B.* objections before the challenged jurors were dismissed and the jury sworn. Although counsel's objection was untimely, the trial court considered the objection on the merits and determined that the State provided race- and gender- neutral reasons for using the peremptory challenges that were not a pretext for discrimination.[5] *See Brass v. State*, 128 Nev. 748, 753, 291 P.3d 145, 149 (2012) (stating that the third step of *Batson* analysis involves determining if opponent of the peremptory challenge has shown that given race-neutral reasons were pretext for discrimination). Thus, to demonstrate prejudice under *Strickland*, Keck had to show that but for trial counsel's untimely objection that resulted in this court concluding that the *Batson/J.E.B.* issue had been waived, the issue had a reasonable probability of success on appeal. We conclude that Keck has not made that showing.

The State used a peremptory challenge to remove prospective juror Henderson because she had been observed sleeping, and even snoring, during voir dire; she expressed trepidation with imposing a death sentence; she believed that the death penalty was only warranted in mass casualty terrorist attacks; and she indicated on her questionnaire that she believed the burden of proof was a shadow of a doubt. The State used a peremptory

---

[5]As the State offered its reasons for using the peremptory challenges before the trial court could address the first step of the *Batson* framework, our decision rests solely on whether counsel demonstrated that the stated reasons were a pretext for discrimination. *Kaczmarek v. State*, 120 Nev. 314, 332, 91 P.3d 16, 29 (2004) (recognizing that *Batson*'s step one is rendered moot when the State offers its neutral explanation before the court makes a step-one ruling).

challenge to remove prospective juror Jones because she had expressed skepticism about the police investigation and the prosecution's decision to pursue the death penalty in a case involving her uncle's murder. The trial court concluded that the State's proffered reasons were race- and gender-neutral and supported by the record and that Keck had not demonstrated purposeful discrimination.

The district court's determination as to discriminatory intent is entitled to great deference. *Id.* at 752, 291 P.3d at 148. Keck focuses on comparative juror analysis to show that the trial court clearly erred, arguing that Jones and Henderson expressed sentiments similar to other veniremembers who were not challenged. While Henderson expressed sentiments about imposing a death sentence that were similar to other veniremembers who served as jurors, the primary reason the State proffered for using a peremptory challenge to remove Henderson was that both the State and the trial judge had observed her sleeping during voir dire. As no other juror was observed sleeping, comparative juror analysis does not support a conclusion that the State's explanation was a pretext for racial or gender discrimination. Regarding prospective juror Jones, Keck asserts that both Jones and a sitting juror had relatives whose murders were the subject of death penalty trials and knew family members who had been through the justice system. However, while the sitting juror was satisfied with the death penalty trial of her great uncle's murderer, Jones was skeptical about the State's decision to seek the death penalty for her uncle's murder. The fact that the prosecutor complimented some of Jones' answers does not impeach the prosecutor's assertion that her other answers were problematic. As Jones' responses were not comparable to another veniremember who was not challenged and Keck did not allege sufficient circumstances to impeach the State's reasons for removing Jones, he did not

SUPREME COURT
OF
NEVADA

(O) 1947A

show that appellate counsel could have successfully argued that the given reasons for removing Jones were a pretext for discrimination. There is no reasonable probability that the outcome of the appeal would have been different but for trial counsel's failure to lodge a timely objection. Accordingly, the district court did not err in denying this claim.

*Bench conferences*

Keck argues that trial counsel should have ensured that all bench conferences were recorded. Other than asserting in a conclusory fashion that he was denied meaningful review on direct appeal due to counsel's deficient performance in this respect, Keck did not explain how he was prejudiced. He did not specify the subject matter of the listed bench conferences or explain their significance. *See Daniel v. State*, 119 Nev. 498, 508, 78 P.3d 890, 897 (2003). Thus, he did not support this claim with specific facts that, if true, would entitle him to relief. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984). We therefore conclude that the district court did not err in denying this claim.

*Confrontation violation*

Keck asserts that trial and appellate counsel should have argued a fingerprint examiner's testimony violated the Confrontation Clause because the examiner did not conduct the initial analysis or author the report; instead he reviewed another examiner's findings.

Keck did not demonstrate deficient performance. While the expert who testified at trial did not perform the initial analysis, his technical review of the initial findings involved considering the evidence and rendering an independent conclusion. As the expert testified about his own independent conclusions based on the evidence recovered, his testimony did not violate the Confrontation Clause. *See Vega v. State*, 126 Nev. 332, 340, 236 P.3d 632, 638 (2010) (concluding that Confrontation

Clause violated when expert testifies to contents of report written by another); *see also Bullcoming v. Mexico*, 564 U.S. 647, 652 (2011) (holding that surrogate expert testimony about a report that was authored by another violates the Confrontation Clause). Because the grounds that Keck asserts for an objection or challenge on appeal would have been meritless, the district court did not err in denying these ineffective-assistance claims.

*Jury instructions*

Keck argues that trial counsel should have challenged the reasonable doubt, premeditation and deliberation, implied malice, and equal-and-exact-justice instructions. Keck has not demonstrated deficient performance or prejudice. Counsel could not have successfully challenged any of these instructions in light of controlling caselaw. *See, e.g., Leonard v. State (Leonard II)*, 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001) (holding that the statutory language defining implied malice is well established in Nevada and accurately informs the jury of the distinction between express and implied malice); *Byford, v. State*, 116 Nev. 215, 236-37, 995 P.2d 700, 714-15 (2000) (approving the premeditation and deliberation instruction given here); *id.* at 232, 995 P.2d at 712 (upholding the malice instruction where the jury is properly instructed on the presumption of innocence); *Leonard v. State (Leonard I)*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998) (providing that where the jury has been instructed that the defendant is presumed innocent and that the State bears the burden of proving guilt beyond a reasonable doubt, the equal-and-exact-justice instruction does not undermine the presumption of innocence or lessen the burden of proof); *Chambers v. State*, 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997) (upholding the reasonable doubt instruction provided in NRS 175.211). Therefore, we conclude that the district court did not err in denying this claim.

*Aggravating circumstance*

Relying on *McConnell v. State (McConnell I)*, 120 Nev. 1043, 102 P.3d 606 (2004), and *United States v. Dixon*, 509 U.S. 688 (1993), Keck argues that counsel should have argued that the great-risk-of-death aggravating circumstance was invalid because the conduct underlying it was covered in the aggravating circumstances based on his convictions in this case for attempted murder (Reyes) and assault with a deadly weapon (Staley). We disagree.

In *McConnell I*, this court held that an aggravating circumstance cannot be based on the same felony that was the predicate for a felony-murder conviction absent a verdict form that specifies an alternative theory of first-degree murder that the jury relied on to convict the defendant. 120 Nev. at 1069, 102 P.3d at 624; *Bejarano v. Warden*, 122 Nev. 1066, 1079, 146 P.3d 265, 274 (2006). Beyond citing *McConnell I* and *Dixon*, Keck provides no cogent argument explaining how those decisions invalidate the great-risk-of-death aggravating circumstance. His failure in that respect provides sufficient reason to deny relief as to this claim. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). In any event, the premise underlying this ineffective-assistance claim also lacks merit. Keck appears to assert that the holding in *McConnell I* encompasses situations where an aggravating circumstance is based on conduct that also supports another aggravating circumstance. *McConnell I* does not say that. But even if it did or we expanded *McConnell I* to that effect, it would not necessarily invalidate the great-risk-of-death aggravating circumstance in this case. The record shows that the great-risk-of-death aggravating circumstance was not based solely on the risk of death to Reyes and Staley. It also was

SUPREME COURT
OF
NEVADA

(O) 1947A

14

based on the fact that Keck repeatedly fired an assault rifle in an apartment building and complex and evidence suggesting Keck had reason to know that Lestelle's young son also lived in the apartment. In other words, Keck knowingly created a great risk of death to more people than just Reyes and Staley. The conduct supporting the great-risk-of-death aggravating circumstance thus goes beyond that supporting the aggravating circumstances based on the attempted murder of Reyes and the assault of Staley. Under these facts, Keck did not demonstrate that counsel could have successfully challenged the great-risk-of-death aggravating circumstance based on his novel interpretation of *McConnell I*. Accordingly, the district court did not err in denying this claim.

*Cumulative error*

Keck argues that the district court erred in denying his claim that the cumulative effect of counsel's deficient performance warrants relief. Assuming that multiple instances of deficient performance can be considered cumulatively for purposes of *Strickland*'s prejudice prong, *see McConnell v. State (McConnell II)*, 125 Nev. 243, 259 n.17, 212 P.3d 307, 318 n.17 (2009) (assuming without deciding, that multiple deficiencies may be cumulated for *Strickland*'s prejudice prong after noting that other courts had so held), there is no cumulative prejudice here. As detailed above, Keck has demonstrated two instances of deficient performance by trial counsel: (1) failure to make a timely objection to preserve an alleged *Batson* violation; and (2) failure to object to prosecutorial misconduct during the penalty phase (the wedding-scenario rebuttal argument). The former occurred during jury selection and the latter occurred at the close of the penalty hearing. Keck does not explain how these instances of deficient performance during different parts of the trial could be cumulated to satisfy *Strickland*'s prejudice prong. *See Jeremias v. State*, 134 Nev. 46, 60, 412

SUPREME COURT
OF
NEVADA

(O) 1947A

15

P.3d 43, 55 (2018) (requiring appellant to demonstrate how errors occurring in different phases of trial had a cumulative effect). Accordingly, the district court did not err in denying this claim.

Having considered Keck's contentions and concluded they lack merit, we

ORDER the judgment of the district court AFFIRMED.[6]

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

cc:    Chief Judge, Eighth Judicial District Court
       Department 3, Eighth Judicial District Court
       Law Office of Christopher R. Oram
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[6]Justice Douglas Herndon voluntarily recused himself from participation in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A